SUMMARY ORDER
Plaintiff-Appellant Instead, Inc. (“Instead”) appeals from a judgment of the United States District Court for the Southern District of New York (Cote, J.) entered on February 5, 2009, dismissing its complaint against Defendants-Appellees ReProtect, Inc. (“ReProtect”) and individual Defendants for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). The district court found that the 1998 Asset Purchase Agreement (hereinafter “Purchase Agreement”) between Ultrafem, Inc. (“Ultrafem”) and Akcess Pacific Group, LLC (“Akcess”), pursuant to which Instead claims rights as assignee, unambiguously excluded from the assets Ultrafem sold to Akcess any rights pursuant to Ultrafem’s 1996 License, Research and Product Development Agreement with ReProtect (hereinafter “1996 Agreement”). The district court ae- *633 cordingly dismissed Instead’s complaint seeking a declaration of its rights and damages against ReProtect for anticipatory breach. We assume the parties’ familiarity with the underlying facts, procedural history, and specification of the issues on appeal.
We review de novo a dismissal of a complaint under Rule 12(b)(6). Jaghory v. N.Y. State Dep’t of Educ., 131 F.3d 326, 329 (2d Cir.1997). We must assume that all well-pleaded facts alleged in the complaint are true and draw all reasonable inferences in the Plaintiffs favor. Chapman v. N.Y. State Div. of Youth, 546 F.3d 230, 235 (2d Cir.2008). The interpretation of a contract is a question of law that we also review de novo. Compagnie Financiere de CIC et de L’Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir.2000). Under New York law, which governs both agreements at issue here, a contractual term is not ambiguous “simply because the parties urge different interpretations.” Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 616 (2d Cir.2001). “The court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning.” Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir.1990) (quotation marks and citation omitted).
We find the language of the Purchase Agreement unambiguous in its exclusion of the rights created by the 1996 Agreement from the “Assets” sold by Ultrafem to Akcess. The Purchase Agreement conveys to Akcess all of Ultrafem’s “right, title and interest in and to the patents ... and other intangible property ..., the material items of which are listed on Schedule 1.1(a), including but not limited to, product formulas, research and development, trade secrets and know how.” Purchase Agreement ¶ 1.1(a). Neither the 1996 Agreement nor any rights held by Ultrafem pursuant to that Agreement are referenced specifically in the conveyance. Listed in a Schedule of those assets “Excluded” from the Purchase Agreement, moreover, is the 1996 Agreement:
Agreement dated as of February 8, 1996 between Seller and ReProtect, LLC. Seller has not made payments required thereunder for the months of March, April, May, and June 1998, and Seller is in default thereunder.
Id. Sched. 1.4. Giving the terms of the contract them most natural and plain meaning, see ReliaStar Life Ins. Co. of N.Y. v. EMC Nat’l Life Co., 564 F.3d 81, 88 (2d Cir.2009), the 1996 Agreement, which created all the rights claimed by Instead in its complaint, was excluded from Ultrafem’s asset sale to Akcess.
We find Instead’s arguments to the contrary unpersuasive. First, Instead’s contention that Schedule 1.4’s exclusion applies only to the research and development portion of the 1996 Agreement is highly implausible. Nowhere does the Purchase Agreement suggest that the various parts of the 1996 Agreement should be treated as separate contracts: The 1996 Agreement is listed as one agreement in the Schedule of Ultrafem’s “Executory Contracts,” Purchase Agreement Sched. G, and Ultrafem’s “Intellectual Property,” id. Sched. 3.6. Further, Paragraph 3.6 of the Purchasing Agreement notes that Schedule 3.6 lists “all intellectual property of Seller.” Id. ¶ 3.6 (emphasis added). Schedule 3.6, in turn, lists the 1996 Agreement using identical language to Schedule 1.4, along with those “Intangible Assets” to be conveyed that are listed in Schedule 1.1(a). The use of the same language in Schedules 1.4 and 3.6 suggests that the reference to the 1996 Agreement is to the entire agreement; otherwise, under In *634 stead’s theory, Schedule 3.6 would not list “all [Ultrafem’s] intellectual property” because it would fail to mention the portions of the 1996 Agreement not related to research and development.
Second, Instead argues that while the 1996 Agreement may have been excluded from the Purchase Agreement, Ultrafem’s rights under the 1996 Agreement vested separately. Instead argues that because these separate vested rights were not excluded specifically by the Purchase Agreement, they passed from Ultrafem to Akcess, and then to Instead. Instead contends that the fact these separate rights were not listed as “material” assets in Schedule 1.1(a) is of no moment because Schedule 1.1(a) was not the exclusive list of Ultrafem’s assets.
We are not persuaded by this argument. The Purchase Agreement treats the 1996 Agreement as a single entity, excluding it as an “Asset,” and contains no provision that can be interpreted to convey the alleged separate vested rights to Akcess. Moreover, we agree with Instead that Schedule 1.1(a) is not the exhaustive list of Ultrafem’s assets. However, Schedule 3.6 is the exhaustive list of Ultrafem’s intellectual property, and it includes only those items listed in Section 1.1(a) as “material” assets and the rights created under the 1996 Agreement. That Schedule treats the 1996 Agreement as a whole, and the 1996 Agreement is excluded as a whole under Schedule 1.4.
Finally, we conclude that the district court did not rely on any improper materials outside of the complaint in reaching its decision, as the Plaintiff argues. The passage of the district court’s opinion that the Plaintiff refers to is merely a summary of the terms of the 1996 Agreement, and in no way resolves any factual dispute. We also decline to remand the case for the district court to consider Instead’s first and second claims for relief. Because we have concluded that Instead never owned any rights under the 1996 Agreement, no “actual controversy” between Instead and ReProtect exists with regard to whether those rights may have terminated. See 28 U.S.C. § 2201.
We have reviewed Instead’s remaining arguments and find them to be without merit.
For the foregoing reasons, the judgment of the district court is hereby affirmed.